IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARBARA ANN KNAPP,                    )
                                      )
              Plaintiff,              )
                                      )
      vs.                             )        Civil Action No. 20-232-E
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
              Defendant.              )

ORDER

AND NOW, this 13th day of September 2021, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on May 5, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

12) filed in the above-captioned matter on April 5, 2021,

IT IS HEREBY ORDERED that the Motion is GRANTED as set forth below.

Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner

of Social Security ("Commissioner") for further administrative proceedings pursuant to sentence

four of 42 U.S.C. § 405(g).

## I.      Background

Barbara Ann Knapp ("Plaintiff") applied for supplemental security income ("SSI")

pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on August 30, 2018.

(R. 15).  Her application was initially denied, but she requested and subsequently received a

hearing before an Administrative Law Judge ("ALJ") on June 4, 2019.  (R. 15).  The ALJ denied

Plaintiff's claim on July 23, 2019 (R. 34) and the Appeals Council declined review.  (R. 1).

Therefore, the ALJ's decision became the agency's final decision.  20 C.F.R. § 416.1481.

1

Plaintiff sought review before the Court.  (Doc. No. 1).  Now pending before the Court are

Plaintiff and the Commissioner's motions for summary judgment.

## II.      Standard of Review

This Court reviews the Commissioner's final decisions to ensure that they are "supported

by substantial evidence."  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Hartranft*, 181 F.3d at 360 (citing *Pierce v. Underwood*, 487 U.S. 552, 565

(1988)); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[T]he threshold for such evidentiary

sufficiency is not high.").  Pursuant to this deferential standard, reviewing courts will affirm ALJ

findings that are supported by substantial evidence even when they "would have decided the

factual inquiry differently."  *Hartranft*, 181 F.3d at 360.

Though the standard of review that is applied to ALJ decisions is deferential, ALJs "must

provide a 'discussion of the evidence' and an 'explanation of reasoning' for [their] conclusion[s]

sufficient to enable meaningful judicial review."  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504

(3d Cir. 2009).[1]  A reviewing court cannot meaningfully review conclusory findings.  *Cotter v.*

---

[1]      ALJs employ a five-step process to consider the evidence in a claimant's record and
make a disability determination:

> In the first two steps, the claimant must establish (1)
> that she is not engaged in "substantial gainful
> activity" and (2) that she suffers from a severe
> medical impairment.  If the claimant shows a severe
> medical impairment, the Secretary determines (3)
> whether the impairment is equivalent to an
> impairment listed by the Secretary as creating a
> presumption of disability.  If it is not, the claimant
> bears the burden of showing (4) that the impairment
> prevents her from performing the work that she has

*Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)) (explaining that reviewing courts' function is thwarted when the agency's findings of fact lack sufficient explanation to be understood).

### III.    The ALJ's Decision

In this matter, the ALJ followed the five-step evaluation in her consideration of Plaintiff's alleged disability.  (R. 15).  She found Plaintiff had not been engaged in substantial gainful activity since the SSI application date and that Plaintiff had fourteen severe, medically determinable impairments ("SMDI"), including postural orthostatic tachycardia syndrome ("POTS").  (R. 17).[2]  At step three, the ALJ determined that none of Plaintiff's impairments—singly or in combination with each other—met or equaled the severity of any presumptively disabling impairments.  (R. 18).

Moving forward, the ALJ formulated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff to be capable of sedentary work with limitations.  (R. 20).  She explained that Plaintiff could only "occasionally climb ramps and stairs," and could never "climb ladders, ropes or scaffolds."  (R. 20).  She also found Plaintiff could only "occasionally balance, stoop, kneel,

---

performed in the past.  If the claimant satisfies this burden, the Secretary must grant the claimant benefits unless the Secretary can demonstrate (5) that there are jobs in the national economy that the claimant can perform.

*Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs*., 48 F.3d 114, 117 (3d Cir. 1995) (citations omitted).  Going through this analysis, ALJs need not "use particular language or adhere to a particular format."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

[2]    Plaintiff's other SMDIs were degenerative disc disease of the cervical spine with radiculopathy, obesity, rheumatoid arthritis, brachial neuritis, carpal tunnel syndrome, occipital neuralgia, migraines, syringomyelia, Chiari malformation type 1, dysautonomia, synovitis, asthma, and depression.  (R. 17).

crouch and crawl," and that she "must avoid more than occasional exposure to extremes of cold and heat, humidity and vibration, and any gases, fumes or other pulmonary irritants." (R. 20). The ALJ further prohibited Plaintiff from "occupational driving" and limited her to "frequent fingering with her bilateral hands." (R. 20). She cautioned that Plaintiff should "avoid all exposure to workplace hazards" and limited her to "simple and routine tasks, and simple work-related decisions." (R. 20). Regarding contact with others, the ALJ limited Plaintiff to occasional contact and added that Plaintiff could tolerate only "few changes to work processes and settings." (R. 20).

The ALJ arrived at this determination through her consideration of Plaintiff's symptoms, objective medical evidence in the record, and the medical opinion evidence. (R. 20—30).[3] Plaintiff complained that her impairments adversely impacted her "ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, use her hands, [and] concentrate and understand." (R. 21). Plaintiff alleged radiating pain, headaches, and migraines due to nerve damage. (R. 21). She further alleged that her POTS symptoms—dizziness, increased heart rate, and affected blood pressure—worsened with standing. (R. 21). Plaintiff also described the stiffness, pain, and swelling she experienced in her joints (particularly in her hands and neck) from rheumatoid arthritis. (R. 22). Due to her symptoms, Plaintiff indicated that she could neither stand nor sit for extended periods and so spent much of her time lying down. (R. 21).

Considering these subjective complaints, the ALJ found that while Plaintiff's symptoms *could* be produced by her medically determinable impairments, the evidence did not corroborate their alleged "intensity, persistence and limiting effects." (R. 22). The ALJ surveyed the

---

[3]     The Court here omits discussion of the ALJ's consideration of Plaintiff's mental health impairments because Plaintiff's arguments for remand focus on the ALJ's consideration of her physical health impairments.

objective medical evidence, including Plaintiff's pain management, primary care, rheumatological, cardiological, and neurological appointments.  The ALJ considered that at Plaintiff's pain management appointments, she had denied unsteadiness, dizziness, and lightheadedness after consuming her medications.  (R. 22).  When Plaintiff established pain management care with Advance Pain Medicine, her "musculoskeletal exam showed that she was tender to palpitation of the cervical and thoracic spine and bilateral paraspinous regions," though her "reflexes were intact bilaterally" and her bilateral upper extremities demonstrated full muscle strength.  (R. 28).  Primary care records documented Plaintiff's difficulties with allergies, neck and arm pain, arthritic pain, and obesity, as well as improvements to her mental health through psychiatric medications.  (R. 23).  Plaintiff's rheumatology records indicated that she experienced tenderness in the joints in both her hands with more tenderness and puffiness in the right.  (R. 24).  Plaintiff tried weekly Humira injections but experienced only a "mild decrease" in pain.  (R. 24).  When Plaintiff saw her cardiologist, Dr. Singh, in December 2018 for POTS and inappropriate sinus tachycardia, Dr. Singh started her on a low dose blood pressure medication, though his findings were otherwise unremarkable.  (R. 27).

The ALJ's review of Plaintiff's neurological records showed generally unremarkable findings, *e.g.*, Plaintiff demonstrated "normal muscle tone in her upper and lower extremities with normal bulk," had full strength in the upper and lower extremities, and demonstrated normal "sensation to light touch, pinprick and vibration" in all areas but the deltoid area.  (R. 25).  Her "rapid alternating movement, finger-to-noise [sic] . . . heel-knee-shin testing," and gait were all normal.  (R. 25).  Later medical evaluation (December 2018) indicated that Plaintiff benefited from taking hydrocodone twice daily insofar as she was able to "keep up with most activities of daily life," but that she remained relatively "miserable" because of "pain in her neck."  (R. 27).

At that time, she "denied any new numbness, tingling or weakness." (R. 27). The ALJ also noted that in April 2019, Plaintiff received a right C3 to C7 facet nerve block to address cervical spinal pain, and that two days later she was observed to have "bilateral sacroiliac joint tenderness, positive Schober's maneuver, and flattening of the lumbar region" with "cervical motion . . . restricted to about 50%." (R. 29).

The ALJ next considered the medical opinion evidence but found that the State agency reviewing psychiatrist's opinion that Plaintiff could stand and walk for about six hours per day was inconsistent with the record and, therefore, unpersuasive. (R. 30). In the end, the ALJ concluded that Plaintiff's subjective complaints and the other evidence justified only those limitations that were included in the RFC. (R. 31). The ALJ specifically noted that Plaintiff's "allegations of dizziness are not documented throughout the record"; the alleged severity of Plaintiff's joint pain, swelling, and stiffness was inconsistent with her treatment records; and that Plaintiff's mild cervical degenerative changes benefitted from pain management medication. (R. 31—32). The ALJ then found that while the RFC she formulated for Plaintiff would not permit a return to past relevant work, Plaintiff could successfully adjust to other "jobs that exist in significant numbers in the national economy," and denied disability. (R. 32).

IV.     **Legal Analysis**

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ failed to seriously consider her subjective complaints, particularly her allegations of dizziness. The Court agrees that the ALJ's explanation of her consideration of Plaintiff's subjective complaints is flawed and will order remand.

Subjective complaints, without more, do not prove disability. *Maloney v. Massanari*, 38 F. App'x 820, 821 (3d Cir. 2002). However, ALJs "must give serious consideration to a

claimant's subjective complaints of pain." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  When ALJs consider subjective complaints, they first determine whether a claimant has a "medically determinable physical or mental impairment(s) that could reasonably be expected to produce [their] symptoms."  SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017).  Then they "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*  Evidence of the pain or other symptoms itself is not required as long as there is "objective evidence of some condition that could reasonably produce pain." *Mason*, 994 F.2d at 1067 (citation omitted). Where there is objective medical evidence of a claimant's symptoms, the claimant's "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Id.*

In this matter, Plaintiff complained that, among her symptoms, she experienced dizziness and lightheadedness.  (R. 51, 199, 201).  The ALJ found that, among Plaintiff's severe, medically determinable impairments, she suffered from postural orthostatic tachycardia syndrome (R. 17) which can cause dizziness or lightheadedness "especially in standing up, prolonged standing in one position, or long walks." *Postural Orthostatic Tachycardia Syndrome (POTS)*, Cleveland Clinic (Sept. 9, 2021, 10:14 AM), https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots.  Not only did Plaintiff have a condition that could cause dizziness, but there are multiple instances in Plaintiff's medical records where her complaints of dizziness were documented.  On June 11, 2018, Plaintiff complained of continuing "intermittent episodes of lightheadedness."  (R. 276).  On August 20, 2018, a review of Plaintiff's systems indicated she was "[p]ositive for dizziness, tingling, sensory change and headaches."  (R. 426). On November 7, 2018, another review of systems similarly indicated that Plaintiff was

"[p]ositive for dizziness, tingling, light-headedness and headaches."  (R. 373).  And while Plaintiff denied "feeling unsteady on feet, generalized weakness, [or] feeling dizzy or lightheaded" at Tri State Pain Institute LLC appointments in September and December 2018, those reports appear to be tightly focused on Plaintiff's falling episodes and the effect of her medication, rather than a general disavowal of dizziness.  (R. 516, 518).

Despite this record, the ALJ discounted Plaintiff's subjective complaints, and explained that "the claimant's allegations of dizziness are not documented throughout the record."  (R. 31). That analysis is erroneous.  Even without objective evidence of the symptom of dizziness, the ALJ should have given "serious consideration" to Plaintiff's dizziness complaint where the evidence established that she suffered from POTS, a condition known to cause dizziness.  *See Mason*, 994 F.2d at 1067.  Further, it appears that there was evidence in the record that Plaintiff experienced dizziness (R. 276, 373, 426), and evidence that Plaintiff denied weakness, unsteadiness, dizziness, or feeling lightheaded after taking medications does not unambiguously contradict the former evidence.  Accordingly, the Court finds further consideration of Plaintiff's symptoms is necessary and will remand this matter to the Commissioner.  The other issues Plaintiff raises in her brief concerning the ALJ's consideration of her rheumatoid arthritis symptoms and the effect of medications on her conditions may be addressed, as necessary, on remand.

### V.    Conclusion

For the foregoing reasons, the Court finds further administrative proceedings are appropriate.  Accordingly, the Court remands this matter to the Commissioner for further consideration consistent with this Order.

s/ Alan N. Bloch
United States District Judge

8

ecf:    Counsel of Record